**Decided June 1, 1989**

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

### APPELLATE DIVISION

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL ) <br> and THE OFFICE OF IMMIGRATION AND ) <br> NATURALIZATION OF THE ) <br> COMMONWEALTH OF THE NORTHERN ) <br> MARIANA ISLANDS, ) <br> ) <br>       Petitioners-Appellees, ) <br> ) <br>      vs. ) <br> ) <br> MARTIN P. JIMENEZ, MARCELINO ) <br> UTAYDE, RICARDO RESTOLES, DANILO ) <br> MENDOZA, NICOLAS C. DE LEON, ) <br> ROLANDO QUIROZ, LEONARDO SALVADOR,) <br> CONSTANTE B. BAJET, ALFREDO G. ) <br> TARVINA, GONZALO R. REYES, EFREN ) <br> MUN\R, EMILIO S. VILLANUEVA, JR., ) <br> ALEJO C. CAPUGAN, JESUS MAGNO, and) <br> LORENZO G. VILLANUEVA, ) <br> ) <br>      Respondents-Appellants. ) <br> ) <br> _____ ) | DCA NO. 88-9010 <br> CTC NOS. 88-145, 88-146, <br> 88-147, 88-148, 88-149, <br> 88-150, 88-151, 88-152, <br> 88-153, 88-154, 88-155, <br> 88-156, 88-157, 88-158, <br> and 88-159 <br><br><br> OPINION |

BEFORE:     MUNSON, HILL,* District Judges and HEFNER,** Designated Judge.

---

    * The Honorable Irving Hill, Senior Judge, United States District Court, Central District of California sitting by designation.

    **The Honorable Robert A. Hefner, Chief Judge, Commonwealth Trial Court, sitting by designation. 48 U.S.C. § 1694(b).

HEFNER, Designated Judge:

## STATEMENT OF THE CASE

On February 29, 1988 the Government filed various Petitions for Order to Show Cause why respondents, 15 nonresident contract workers from the Philippines, should not be deported.

At the deportation hearing, the trial court found the respondents deportable and gave them 30 days to voluntarily leave the Commonwealth. Respondents appealed.

In this opinion, we construe and harmonize various Commonwealth statutes governing jurisdiction over the status of nonresident workers and jurisdiction over their deportation. We reverse an order of the trial court requiring the deportation of the 15 nonresident workers who are the respondents in the instant case.

## FACTS

Respondents/appellants ("the workers") came to Saipan to work for 3-K Corporation ("the employer"). The employer had entered a standard form of "Employer's Nonresident Worker Agreement" with the Division of Labor covering the employment. The workers were issued entry permits by the Division of Labor, which bore an expiration date in late June, 1988.

On January 26, 1988, the workers filed a complaint against the employer with the Division of Labor seeking back wages and claiming unauthorized wage deductions. Also, on that same date, the employer issued a "Letter of Termination" to

**829**

each of the workers terminating their employment contracts for cause. The reasons given for this termination included neglect and nonperformance of duties, abandonment of jobs, engagement in unauthorized employment or business activities, and incompetence or misrepresentation of qualifications.

The workers' complaint was investigated by an Administrative Hearing Officer with the Division of Labor. On February 8, 1988 the Hearing Officer issued a "Labor Order" concerning the complaint. In large measure, it found against the workers. It also contained language to the effect that the workers should be allowed to continue working for the employer. The workers appealed the Labor Order to the Director of Commerce and Labor who heads the Division of Labor. On March 8, 1988, the Director remanded the matter for a departmental hearing, finding that no prior hearing within the Department of Commerce and Labor had been conducted in the matter as required by law. The Director therefore concluded that any prior decision or order issued by anyone within the Department was "issued erroneously." No hearing within the Department pursuant to the Director's remand was ever held because of the deportation order issued by the Commonwealth Trial Court as described below.

On February 29, 1988, while the aforesaid departmental appeal was pending, and before the Director's March 8, 1988 remand order was issued, the Immigration and Naturalization Office ("INO") filed petitions in the Commonwealth Trial Court that the workers show cause why they should not be deported on

**830**

the ground that the employment of each had been terminated. The trial court held a deportation hearing pursuant to the show cause order on March 22, 1988. The trial judge found that the workers' refusal to return to their employment with 3-K Corporation constituted a termination of their employment and, therefore, they were subject to deportation. In an order dated March 30, 1988, the trial court ordered the workers to voluntarily depart the Commonwealth on or before April 22, 1988, which was 30 days after the deportation hearing. This appeal followed. Deportation of the workers has been stayed pending resolution of this appeal.

Counsel for the workers argues that the trial court's deportation order is void because the trial court lacked jurisdiction to enter it. Counsel contends that INO may not institute deportation proceedings against a nonresident worker based upon the purported termination of that worker's employment, and the Commonwealth Trial Court may not act upon such a deportation petition, unless there has been a final determination by the Division of Labor in the Department of Commerce and Labor that the worker's employment contract has been terminated and his work permit has been revoked.

For reasons which are not clear to us, the workers' attorney goes on to make a constitutional argument that seems off the point. He attacks the validity of 3 CMC §§ 4434(f), 4434(g) and 4447(g). Those sections make a nonresident worker deportable whenever he has left his employment or is no longer employed by the employer approved by the Chief of Labor. They

**831**

provide that deportation may be deferred for up to 20 days to enable the workers to pursue a civil action against the employer for breach of contract or other remedies. But they also provide that no such civil action can be commenced unless the nonresident worker has first pursued and exhausted his administrative remedies. Counsel argues that allowing the worker to remain in the Commonwealth only 20 days to pursue a civil action denies the worker access to the courts and violates due process.

We will dispose of counsel's constitutional claim first. Respondents have no standing to contest the validity of the statutory sections being attacked because none of them have filed any civil action. For reasons stated below, we have determined to reverse the deportation order entered by the Commonwealth Trial Court in the instant case. It is thus unnecessary for us to decide the constitutional challenge, even if standing, arguendo, exists. We decline to consider the constitutional claim.

## ISSUE

I.      WHETHER THE IMMIGRATION OFFICE CAN INSTITUTE DEPORTATION PROCEEDINGS AGAINST A NONRESIDENT WORKER BASED UPON THE TERMINATION OF THAT WORKER'S EMPLOYMENT PRIOR TO A FINAL DETERMINATION BY THE DIVISION OF LABOR THAT THE WORKER'S EMPLOYMENT CONTRACT HAS BEEN TERMINATED AND HIS OR HER WORK PERMIT REVOKED.

## STANDARD OF REVIEW

Respondents' arguments involving jurisdiction of the trial court raise issues of law. Conclusions of law are reviewed by the appellate court de novo. United States v. Endicott, 803 F.2d 506, 508 (9th Cir. 1986).

**832**

A.   Procedures for entry and exit of nonresident workers.

Initially, any employer who desires to utilize the services of nonresident workers must notify the Chief of Labor (the "Chief").1/ 3 CMC § 4431.2/ Upon such notification, the Chief must determine under what conditions and for what time period the employer may use a nonresident worker to fill a particular position. 3 CMC § 4433. If the employer desires to use a nonresident worker under these conditions, the employer shall enter into a nonresident employment agreement with the Chief. Id. Any contract offered to a nonresident worker pursuant to this agreement shall be contingent upon approval by the Chief. 3 CMC § 4433(f).

After the employment contract is approved by the Chief, the employer must post a bond. 3 CMC § 4435(a). After receiving evidence of the bond and payment of the required fees, the Director shall issue a certificate to be used for both labor and immigration purposes (the "certificate"). 3 CMC §§ 4412(c) and 4435(b). Such certificate shall be forwarded to the immigration authorities for immigration clearance. 3 CMC § 4435(b). Upon receipt of the certificate, the immigration authorities shall issue the appropriate entry documents or state in writing their reasons for denying such. 3 CMC § 4435.

---

1/
The Chief is under the supervision of the Director of Commerce & Labor (the "Director"). 3 CMC § 4421.

2/
The Chief may authorize an exemption from this section with the approval of the Director. 3 CMC § 4440(a).

**833**

In order to assure compliance with the employment contract, the Chief shall conduct investigations. 3 CMC § 4441. If such investigation leads the Chief to believe that any contract has or is being violated, the Chief shall 1) issue a warning and request to correct the violation, or 2) issue a Notice of Violation and conduct a hearing. 3 CMC § 4444(a). All hearings must be commenced within 30 days of the Notice of Violation. 3 CMC § 4444(c). The hearing will be conducted by the Chief or such hearing officer as may be appointed by the Director. 3 CMC § 4444(b). Upon conclusion of such hearing, the hearing officer shall issue a finding, decision, and order. 3 CMC § 4444(d). These shall not be judicially reviewable until final. Id. In addition to other sanctions, the hearing officer may cancel or modify a nonresident worker's certificate, agreement, or contract. 3 CMC § 4444(e). If a certificate is cancelled or modified, the Chief shall immediately notify the immigration authorities. 3 CMC § 4444(f).

Appeals of such administrative hearings shall be made to the Director. 3 CMC § 4445(a). The Director's decision shall constitute final action for purposes of judicial review. 3 CMC § 4445(c).

In this case, the workers were ordered deported pursuant to 3 CMC § 4340(e) which provides that an alien may be deported for failure to comply with the requirements or conditions of his entry. The trial court found that the workers failed to comply with their conditions of entry since they were no longer employed by 3-K Corporation.

**834**

B. The employment status of nonresident workers is to be determined in the first instance by the Division of Labor.

At the deportation hearing, testimony indicated that the Division of Labor does not view a letter of termination given to a nonresident worker by an employer as determinative of his employment status. See, testimony of Jack Torres, Excerpts of Record page 10, and Felix Fitial, Excerpts pages 19 and 20. Prior to the deportation hearing no administrative determination had been made as to the workers' employment status.

3 CMC § 4444(e)(5) provides that, after a hearing, the Chief may transfer a nonresident worker to another employer with the consent of the worker and the new employer. Since there was no administrative hearing prior to the deportation proceedings, the Chief was precluded from exercising this option to transfer the workers. Had he done so, the workers would have remained in compliance with their entry permits and would not have been deportable under 3 CMC § 4340(e).

The procedures established for the entry and exit of nonresident workers are different from those established for other types of aliens. Prior to entry into the Commonwealth all nonresident labor contracts must be approved by the Chief. 3 CMC § 4434. Cancellation of this contract, for whatever reason, must be done pursuant to a hearing. 3 CMC § 4444(e).

Before a nonresident worker can pass through immigration, a certificate must be issued by the Director. 3 CMC § 4435(b). INO cannot admit a nonresident worker prior to the

**835**

Director's issuance of this certificate. 3 CMC § 4435(c). The entry permit issued by INO is based upon the certificate. 3 CMC § 4332(b)(3). Any cancellation or modification of this certificate can be done only after a hearing. 3 CMC § 4444(e). As indicated above, no hearing was conducted.

In this case, there is no evidence that the Chief either cancelled or modified the workers' certificates to result in the termination of their employment. 3 CMC § 4444(f). The cancellation of the respondents' nonresident worker's certificates was a prerequisite to having their employment terminated. A hearing was necessary to determine their employment status. Since no hearing occurred in this instance, as a matter of law the workers had not been terminated at the time of the deportation hearing.

Appellee contends that INO had an absolute right pursuant to 3 CMC § 4447(g) to institute deportation proceedings without going through any administrative process in situations where nonresident workers are found working for som.eone other than their authorized employer. This argument is neither pertinent nor logical. First of all, INO sought to have the workers deported because they had allegedly been terminated by their employer, not because they were working for someone else. Secondly, the trial judge found that the workers were deportable by virtue of "their refusal to return to their employment" which constituted "a termination thereof." Despite appellee's contention to the contrary, the trial court clearly did not order deportation pursuant to 3 CMC § 4447(g).

Finally, 3 CMC § 4447(g) cannot be read in isolation but must be viewed in the context of the entire Nonresident Workers Act. 3 CMC §§ 4411, et seq. § 4447(g) is premised upon a grievance being filed with the Chief of Labor pursuant to subsection (b). § 4447(b) provides that, upon a nonresident worker's complaint, the Chief shall conduct an investigation and make a written determination within 30 days of the filing of such complaint. Read in its entirety, § 4447 clearly indicates a legislative intention that the Division of Labor process employee grievances initially and, upon investigation, if it is determined that the complaining worker is working for someone other than his authorized employer, Labor may cancel the worker's certificate pursuant to § 4444(e). Notably, cancellation is not the only option available to Labor upon such a finding. Labor may decide to modify the worker's certificate or contract or may transfer the worker to another employer. If the worker's certificate is cancelled based upon a finding that he is working for an unauthorized employer, the Chief shall immediately notify INO. 3 CMC § 4444(f). Upon receipt of such notification, INO may institute deportation proceedings against the worker in the trial court. However, prior to the completion of the administrative process, the trial court is without jurisdiction to hear matters involving the deportation of nonresident workers as these matters come before the court as appeals from administrative proceedings. To hold otherwise would clearly contravene the purposes of the Nonresident Workers Act since any deportation of a nonresident worker prior to a

determination on his complaint would deprive such worker of his right to administrative proceedings.

The INO sought to deport respondents because their respective employment contracts had been cancelled. The trial court found that respondents' employment contracts had been terminated. However, any cancellation of a nonresident workers' contract of employment must be made in the first instance by the Division of Labor. 3 CMC § 4444(e). Since primary jurisdiction in this case lies with the Division of Labor and respondents' administrative remedies were not exhausted, the trial court was without authority to find respondents deportable based on their employment status. Therefore, the decision of the trial court is hereby REVERSED.

Dated: _JUNE 1, 1989_

_____
ALEX R. MUNSON, District Judge

_____
IRVING HILL, District Judge

_____
ROBERT A. HEFNER, Designated Judge